**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CITY MERCHANDISE INC., ) | |
| Plaintiff, ) | |
| v. ) | Case No. 18-cv-6748 (JSR) |
| BALENCIAGA AMERICA, INC., ) | |
| BALENCIAGA, S.A., and DEMNA ) | |
| GVASALIA; and ABC COMPANIES, ) | |
| Defendants. ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION AND AN ORDER OF SEIZURE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ..........................................................................................3

ARGUMENT ...............................................................................................................5

I.      Legal Standard. .................................................................................................5

II.     Plaintiff Has Not Made A Showing Of Irreparable Harm. .................................6

        A.      Plaintiff Has Not Identified Any Harm
                Redressable Under U.S. Copyright Law. ................................................6

        B.      Any Claimed Harm Is Speculative And Not Irreparable. .......................8

        C.      Plaintiff's Delay Demonstrates The Lack Of Irreparable Harm. ...........10

III.    Plaintiff Has No Likelihood of Success On The Merits. ..................................11

        A.      Plaintiff Cannot Demonstrate A Likelihood Of Success On The
                Merits Of Its Attempt To Enjoin The Exportation Of Goods. ..............11

        B.      Plaintiff Cannot Demonstrate A Likelihood Of
                Success On The Merits Of Its Infringement Claim. ..............................12

                1.      Defendant Has Not Infringed Any Valid
                        Registered Copyright Owned By Plaintiff. ................................12

                2.      Balenciaga America's Design Is Also Protected As A Fair Use. ..............16

IV.     The Balance Of The Hardships Does Not Tip In Favor Of Plaintiff. ...............18

V.      The Public Interest Does Not Weigh In Favor Of An Injunction. ....................19

VI.     Plaintiffs' Request For An Order Of Seizure Is Baseless. ...............................20

CONCLUSION..........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006)..................................................................17, 18

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006)..................................................................16, 17

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
934 F.2d 30 (2d Cir. 1991)......................................................................8, 9

*Buffalo Forge Co. v. Ampco–Pittsburgh Corp.*,
638 F.2d 568 (2d Cir. 1981)........................................................................19

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)..........................................................................16, 17, 20

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998)........................................................................16

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985)........................................................................10

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992)..................................................................12, 13

*eBay, Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)......................................................................................6

*Energy Intelligence Grp., Inc. v. Canaccord Genuity, Inc.*,
16-cv-8298, 2017 WL 1967366 (S.D.N.Y. May 11, 2017).................................7, 8

*Entral Grp. Int'l, LLC v. Honey Café on 5th, Inc.*,
No. 05 CV 2290, 2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006)...........................20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)....................................................................................13

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ......................................................................8

*Getty Images (US), Inc. v. Microsoft Corp.*,
61 F. Supp. 3d 296, 300 (S.D.N.Y. 2014)......................................................9

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007).............................................................................5, 6

*Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.,*
  824 F. Supp. 2d 389 (E.D.N.Y. 2011) ...............................................................19

*Harper & Row Publishers, Inc. v. Nation Enters.,*
  471 U.S. 539 (1985)............................................................................................19

*Harrison/Erickson, Inc. v. Chi. Bulls Ltd. P'ship,*
  91 Civ. 1585, 1991 WL 51118 (S.D.N.Y. Apr. 3, 1991)................................6, 10

*Hart v. Dan Chase Taxidermy Supply Co.,*
  86 F.3d 320 (2d Cir. 1996).................................................................................13

*Lennon v. Premise Media Corp.,*
  556 F. Supp. 2d 310 (S.D.N.Y. 2008)................................................................16

*Levitin v. Sony Music Entm't,*
  101 F. Supp. 3d 376 (S.D.N.Y. 2015)..................................................................8

*Merit Diamond Corp. v. Frederick Goldman, Inc.,*
  376 F. Supp. 2d 517 (S.D.N.Y. 2005)................................................................20

*Music Sales Ltd. v. Charles Dumont & Son, Inc.,*
  800 F. Supp. 2d 653 (D.N.J. 2009) .....................................................................7

*Paramount Pictures Corp. v. Doe,*
  821 F. Supp. 82 (E.D.N.Y. 1993) .......................................................................20

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
  602 F.3d 57 (2d Cir. 2010).................................................................................12

*Salinger v. Colting,*
  607 F.3d 68 (2d Cir. 2010)..................................................................6, 8, 9, 19

*Silberstein v. Fox Entm't Grp., Inc.,*
  424 F. Supp. 2d 616 (S.D.N.Y. 2004), *aff'd sub nom. Silberstein v. John Does
  1-10*, 242 F. App'x 720 (2d Cir. 2007) ..............................................................12

*Transcience Corp. v. Big Time Toys, LLC,*
  50 F. Supp. 3d 441 (S.D.N.Y. 2014)...................................................................10

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,*
  277 F.3d 253 (2d Cir. 2002)......................................................................5, 10, 11

*Update Art, Inc. v. Modiin Publ'g, Ltd.,*
  843 F.2d 67 (2d Cir. 1988)...................................................................................7

iii

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir. 1996)................................................................................13

*WPIX, Inc. v. ivi, Inc.,*
    691 F.3d 275 (2d Cir. 2012)..........................................................................6, 19

*Wright v. Warner Books, Inc.,*
    953 F.2d 731 (2d Cir. 1991)..............................................................................18

*Zalewski v. Cicero Builder Dev. Inc.,*
    754 F.3d 95 (2d Cir. 2014)................................................................................12

**Statutes**

17 U.S.C. § 106 ........................................................................................................2

17 U.S.C. § 107 ........................................................................................16, 17, 18

17 U.S.C. § 503 ......................................................................................................20

Defendant Balenciaga America, Inc. ("Balenciaga America" or "Defendant") opposes the motion (the "Motion") of plaintiff City Merchandise Inc. ("CMI" or "Plaintiff") for a preliminary injunction and an order of seizure.

## PRELIMINARY STATEMENT

Plaintiff CMI has sued Balenciaga America for infringing CMI's claimed copyright in a stylized design of the New York City skyline.  CMI knew of Balenciaga America's allegedly infringing products in February 2018, when CMI first filed to register its copyright.  CMI sent a demand letter to Balenciaga America in late June 2018 and filed suit on July 27, 2018.  CMI then waited two and a half months to bring this motion for an injunction.

Even apart from this delay, Plaintiff's request for an injunction is perplexing:  CMI does not seek to prevent Balenciaga America from selling the allegedly infringing products in the United States; CMI is content to allow that to continue.  Instead, CMI urges this Court to prevent Balenciaga America from transferring the allegedly infringing products outside the United States, even though nothing in the Copyright Act prohibits that.  CMI intimates that there is some nefarious subterfuge underway, telling this Court that Balenciaga America "has refused to provide any details about what it intends to do with its remaining inventory of Infringing Products."  Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction [Doc. 26] ("Br.") at 13.

CMI's suggestion is untrue.  Balenciaga America informed CMI's counsel in writing that it was holding the accused products in inventory in the United States and even offered to stipulate that it would continue to do so, but without prejudice to its position in this litigation. CMI never responded to that offer, and still has not responded, apparently preferring to burden the Court and Balenciaga America with this unnecessary Motion.

1

Plaintiff's Motion fails utterly on the merits as well.  A preliminary injunction is an extraordinary remedy to prevent irreparable harm during the pendency of an action where the moving party is likely ultimately to succeed on the merits.  A preliminary injunction cannot be used to obtain relief that a party could never obtain on a final adjudication on the merits, but that is precisely what CMI is seeking here.  Balenciaga America did not design or manufacture the allegedly infringing goods; it simply imported them for sale in the United States.  Plaintiff wants to prevent Balenciaga America from removing the goods from the United States, but that is not an act of infringement under Section 106 of the Copyright Act, as Plaintiff tacitly concedes.  On this basis alone, the requested injunction should be denied.

Plaintiff cannot otherwise meet its burden of satisfying the requirements for issuance of a preliminary injunction.  First, Plaintiff's irreparable harm argument has no basis in law or fact.  Plaintiff's asserted harm – the difficulty of pursuing monetary damages for overseas sales – is no harm at all, because overseas sales do not violate any rights that Plaintiff might have under the Copyright Act.  Whether an alleged harm is irreparable depends on whether the harm could be remedied by a monetary judgment, not the difficulty in pursuing such a judgment.  Moreover, the harm Plaintiff alleges is neither actual nor imminent; Balenciaga America is holding the accused products in the United States and even offered to stipulate that it would continue to do so.  CMI's claims of irreparable harm are also belied by its inexplicable delays in seeking relief.  Given Plaintiff's failure to demonstrate any cognizable or likely harm, the balance of hardships does not weigh in favor of injunctive relief.

CMI cannot demonstrate a likelihood of success of the merits, either, because Balenciaga America has substantial defenses to infringement.  Plaintiff's supposedly original design is, as even Plaintiff itself admits, simply a collage of some of the most well-known landmarks in the

New York City skyline, which are unprotectable under copyright law. Balenciaga America has arranged these unprotectable elements differently. To the extent that there is some similarity in the "look and feel" or style of the designs, that similarity arises from the fact that both designs are done in a style that has long been associated with hot rods, graffiti art, and hip hop – a style that is decidedly not original to Plaintiff. The doctrine of fair use also protects Balenciaga America's products. Balenciaga America's designs are transformative, offering a subversive, tongue-in-cheek commentary on fusty notions of propriety in fashion, and emphasizing the beauty in the ordinary. Balenciaga's *couture* creations are plainly not market substitutes for CMI's souvenirs, given the enormous differences in price, channels of trade, and target markets.

Lastly, there is no public interest in an injunction here. There is no risk of consumer harm or deception, and an injunction would frustrate copyright's goal of stimulating creative expression.

Because Plaintiff cannot satisfy even a single requirement for an injunction, let alone all four, its request for an injunction and a seizure order should be denied.

## STATEMENT OF FACTS

Balenciaga America imports, markets, distributes, and sells luxury goods that are designed by Balenciaga, the world-renowned fashion house located in Paris, France. *See* Capeci Decl. ¶ 2.[1] For nearly a century, Balenciaga has been one of the world's leading fashion houses. *See id.* ¶ 3. Critics and fashion historians have regarded Balenciaga's inventive and revolutionary designs as masterworks of *haute couture* in the mid-20th Century; its creations were embraced by clients that included European aristocracy and Jacqueline Kennedy. Today, Balenciaga is famed for its subversive, tongue-in-cheek aesthetic. *See id.* ¶ 4. Recent collections

---

[1] *Declaration of Vira Capeci in Opposition to Plaintiff's Motion for a Preliminary Injunction*, dated October 16, 2018, filed contemporaneously herewith (the "Capeci Decl.").

have drawn inspiration from everyday, unremarkable objects, much as Duchamp made a urinal into art and Andy Warhol found beauty in cans of Campbell's soup, Balenciaga's designs transform mundane items into couture.  *See id.*

The Balenciaga items at issue in this litigation are a shopper's tote bag, hoodie, large and small pouches, and skirt that feature a print of New York City (collectively, the "Balenciaga NYC Tourist Collection").  *See id.* ¶ 5.[2]  The Balenciaga NYC Tourist Collection was first introduced in the late summer of 2017 and was first offered for sale in the United States in November 2017.  *See id.* ¶ 6.  Inspired by tourist souvenirs, the collection references hot rod and graffiti-style airbrushed imagery.  *See id.*

Balenciaga America has no involvement in the design or manufacture of the Balenciaga NYC Tourist Collection; the products are designed and manufactured in Europe.  *See id.* ¶ 7. Rather, Defendant imports and sells the Balenciaga NYC Tourist Collection in the United States. *See id.* ¶ 8.  Defendant has offered these items for sale in its own boutiques and has sold these items at wholesale to high-end retailers such as Barneys New York, Neiman Marcus, Saks Fifth Avenue, and Bergdorf Goodman.  *See id.*  The retail price for the Balenciaga NYC Tourist Collection ranges from $650 for the small pouch to $1,950 for the shopper tote bag.  *See id.*  By contrast, plaintiff's products are offered for sale in souvenir shops and airports, at a price of $20 for a tote bag to just a few dollars for a coin purse.  *See id.* ¶ 9; *accord* Declaration of Deborah Gindi ("Gindi Decl.") ¶ 8.

Defendant first learned of Plaintiff's claims of infringement when it received a demand letter dated June 29, 2018.  *See* Capeci Decl. ¶ 10.  Although Defendant denies the Plaintiff's claims of infringement, it took prompt action.  *See id.*  In an abundance of caution, Defendant

---

[2]   Plaintiff has also accused a scarf of infringement, but Balenciaga America did not import or sell the scarf in the United States.  *See id.* ¶ 5 n.1.

removed the products in the Balenciaga NYC Tourist Collection from its retail boutiques.  *See id.*  Defendant has since been holding those items in its inventory in the United States and has no plans to transfer them.  *See id.*  Because the products in the Balenciaga NYC Tourist Collection are luxury goods, they are made in limited quantities and there are only a small number of them at issue.  *See id.* ¶ 11.  Defendant is currently holding a total of 36 items in inventory.  *See id.*

The Certificate of Registration that CMI has provided to this Court indicates that it was filed on February 9, 2018, and that after more than three months, on May 23, 2018, CMI requested special handling "due to pending litigation."  Gindi Decl. Exh. A at 2.  The certificate issued the next day on May 24, 2018.  *Id.*  CMI then waited a month to send its demand letter to Balenciaga America, and waited another month before filing its complaint on July 27, 2018. [Doc. 6].  After delaying for two and a half months, on October 12, 2018, CMI filed the motion for an injunction that is now before the Court.

## ARGUMENT

### I. Legal Standard.

The Second Circuit has urged district courts to use great care when determining whether to grant a preliminary injunction, which it has described as "one of the most drastic tools in the arsenal of judicial remedies."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007); *see also Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 258 (2d Cir. 2002) (a preliminary injunction is an "extraordinary equitable remedy").

A party in a copyright infringement action must meet the traditional four-factor equitable test to obtain a preliminary injunction, demonstrating that:  (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent

injunction.  *See, e.g., eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012); *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).  Plaintiff has not met that showing and the Motion should be denied.

## II.     Plaintiff Has Not Made A Showing Of Irreparable Harm.

Irreparable harm is "harm to the plaintiff's legal interests that could not be remedied after a final adjudication," considering whether "remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury."  *WPIX, Inc.*, 691 F.3d at 285 (alteration in original).  The harm must be "neither remote nor speculative, but actual and imminent . . . ."  *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66.   The movant must demonstrate "that it is *likely* to suffer irreparable harm"—a standard described as "extremely high."  *Harrison/Erickson, Inc. v. Chi. Bulls Ltd. P'ship*, 91 Civ. 1585, 1991 WL 51118, at *7 (S.D.N.Y. Apr. 3, 1991).

"[I]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . . ."  *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66.  For this reason, a court will not consider the other requirements for issuance of an injunction unless and until a moving party has demonstrated irreparable harm.  *See id.*  Here, Plaintiff fails to identify any harm, let alone irreparable harm, if the accused products were transferred or sold outside the United States.  Consequently, the Motion should be denied.

### A.     Plaintiff Has Not Identified Any Harm
### Redressable Under U.S. Copyright Law.

Plaintiff declares conclusorily that the transfer of the accused products outside of the U.S. will "result[] in additional damage to City Merchandise."  Br. 14.  The only "harm" that Plaintiff describes, however, is the fact that it will be more difficult and costly for Plaintiff to "recover its damages for illegal overseas sales . . . ."  Br. 13; *see also* Toptani Decl. ¶ 11 ("If [Defendant]

6

exports Infringing Products to unknown locations offshore . . . it would be difficult, if not impossibl[e], for [Plaintiff] to calculate and recover such damages."); Gindi Decl. ¶ 10 ("City Merchandise would have significant difficulties pursuing monetary damages against Balenciaga if it exports its US inventory outside the country to engage in illegal sales elsewhere.").  Plaintiff further claims that the transfer of inventory overseas will "den[y] City Merchandise the ability to rightfully receive appropriate damages for the Infringing Products."  Br. 4-5.

In effect, Plaintiff complains that it will be harmed because the sale of the accused products outside the United States will not be an infringement of any of its rights under its U.S. copyright.  This supposed "harm" is no harm at all.  The Balenciaga NYC Tourist Collection was designed and manufactured in Europe.  *See* Capeci Decl. ¶ 7.  Defendant imported and sold these goods in the United States.  *See id.* ¶¶ 7-8.  Under these circumstances, there is no "predicate act" of infringement occurring in the United States and the distribution of these goods overseas *cannot* constitute infringement under the Copyright Act as a matter of law.  *See Music Sales Ltd. v. Charles Dumont & Son, Inc.*, 800 F. Supp. 2d 653, 659–60 (D.N.J. 2009) (holding that the exportation of goods did not constitute infringement under the Copyright Act in the absence of a predicate act occurring in the United States that itself constitutes infringement under the Copyright Act).

It is well established that where, as here, there is no domestic predicate act of infringement – such as copying or manufacturing an infringing item in the United States – U.S. copyright law has no extraterritorial application.  *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("It is well established that copyright laws generally do not have extraterritorial application."); *Energy Intelligence Grp., Inc. v. Canaccord Genuity, Inc.*, 16-cv-8298, 2017 WL 1967366, at *3 (S.D.N.Y. May 11, 2017) (dismissing claims under the

Copyright Act absent any allegation of a domestic predicate act of infringement); *Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 384-85 (S.D.N.Y. 2015) (same).

Prior to Plaintiff's filing of the Motion, Defendant  informed Plaintiff that the exportation of goods and overseas sales are not actionable under the Copyright Act and provided relevant case law on these points.  *See* Declaration of Edward J. Naughton ("Naughton Decl.") ¶ 2. Plaintiff does not cite a single case to the contrary; it simply tells the Court that "Plaintiff is unaware of any law that would prevent this Court" from issuing an injunction.  *See* Br. 13. Plaintiff does not cite any law, however, that properly authorizes the Court to issue an injunction against the transfer of the products outside the United States, and its apparent decision to ignore the cases that directly address the question does not make that law disappear.

Plaintiff is attempting to use the extraordinary relief of a preliminary injunction to prevent Defendant from engaging in lawful activity that causes no actionable harm to Plaintiff under the Copyright Act.  For this reason, Plaintiff has identified no injury that it "will suffer if [it] loses on the preliminary injunction but ultimately prevails on the merits . . . ." *Salinger*, 607 F.3d at 80.  Given that Plaintiff would have no right to prevent the exportation and/or overseas sales of the accused goods even if were to succeed on the merits, Plaintiff has alleged no irreparable harm.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 745-46 (9th Cir. 2015) (holding that plaintiff failed to demonstrate irreparable harm where the harm alleged—personal and reputational harms—were not the types of harms remedied under copyright law).

## B.  Any Claimed Harm Is Speculative And Not Irreparable.

Plaintiff has failed to establish irreparable harm for the separate and independent reason that its claimed harm is speculative and not irreparable.  "A mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction."  *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 34 (2d Cir. 1991); *see also Salinger*, 607 F.3d at 82

("[P]laintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm."). Here, Plaintiff speculates that Defendant *might* transfer the goods outside the United States. *See, e.g.*, Gindi Decl. ¶ 10 ("City Merchandise would have significant difficulties pursuing monetary damages against Balenciaga *if* it exports its US inventory outside the county") (emphasis added).

Plaintiff even represents to the Court that Balenciaga America "has refused to provide any details about what it intends to do with its remaining inventory of Infringing Products." Br. 13.[3]  This assertion is simply false:  Balenciaga America informed Plaintiff's counsel, days before this Motion was filed, that it was not transferring any of the items outside the United States and offered a stipulation. *See* Naughton Decl. ¶¶ 3-4, Exh 1.  Plaintiff refused to respond or acknowledge this offer.  As defense counsel informed Plaintiff, Balenciaga America has removed the accused products from its retail boutiques (without prejudice), has no plans to export them, and is holding the remaining 36 items in inventory. *See* Capeci Decl. ¶¶ 10-11.

"[I]n order to obtain an injunction . . . the moving party must satisfy the court that relief is needed—there must be some cognizable danger of recurrent violation . . . ." *Getty Images (US), Inc. v. Microsoft Corp.*, 61 F. Supp. 3d 296, 300 (S.D.N.Y. 2014).  Where, as here, the non-moving party has represented that there is no risk of acts that are claimed to be infringing, injunctive relief will not be granted. *See id.* (denying motion for preliminary injunction where

---

[3]   Plaintiff also draws dark inferences from the fact that Balenciaga America did not provide Plaintiff with any information about sales of the accused products outside of the United States. *See* Br. 4.  The actual reason is far from sinister:  Balenciaga America only does business in the United States and does not have any information about sales elsewhere.  In any event, for the reasons discussed above, sales of the accused products outside the United States are not actionable under U.S. law and information about them is irrelevant.  The law is clear:  overseas sales are beyond the scope of this lawsuit. *See supra* § II.A.

company promptly disabled the widget at issue and represented in opposition to the motion that it would not re-launch the widget during the pendency of the lawsuit).

In all events, even if the claimed harm were to befall Plaintiff, it could easily be remedied by monetary damages.  The fact that it might be more inconvenient to pursue action in another jurisdiction is no basis for an injunction.  *See Twentieth Century Fox Film Corp.*, 277 F.3d at 258 ("[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted," even if the loss is "difficult to precisely quantify").  Having failed to demonstrate any injury "requiring a remedy of more than mere monetary damages," let alone an imminent injury, Plaintiff has failed utterly to establish irreparable harm.  *See Harrison/Erickson, Inc.*, 1991 WL 51118, at *7.

**C.      Plaintiff's Delay Demonstrates The Lack Of Irreparable Harm.**

Plaintiff's delay in seeking this injunction severely undercuts its irreparable harm argument.  To justify extraordinary preliminary relief, Plaintiff must show that the irreparable harms it claims are "imminent"—that is, that they will occur before the Court can resolve the case on its merits.  The Second Circuit has recognized that delay in bringing suit demonstrates the lack of imminence.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (reversing grant of preliminary injunction because "[d]elay in seeking enforcement of [plaintiff's] rights . . . tends to indicate at least a reduced need for such drastic, speedy action"); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 457-58 (S.D.N.Y. 2014) (denying preliminary injunction and noting "[i]t is well-established in this Circuit that delays in moving for injunctive relief to protect copyrights . . . from further unauthorized use weigh heavily against the movant").

Here, Plaintiff waited a month after obtaining its copyright registration to send a demand letter to Defendant.  *See* Gindi Decl. Exh. A; Toptani Decl. ¶ 5.  Plaintiff then waited another month after sending the demand letter to file suit and more than two months after filing suit before, finally, deciding to seek a preliminary injunction.  *See Complaint*, filed July 27, 2018 [Doc. 6]; Motion.  This unexplained delay destroys whatever remains of Plaintiff's claims of irreparable harm.

III.   **Plaintiff Has No Likelihood of Success On The Merits.**

   A.   **Plaintiff Cannot Demonstrate A Likelihood Of Success On The Merits Of Its Attempt To Enjoin The Exportation Of Goods.**

In arguing that is likely to succeed on its claims, Plaintiff focuses on infringement in the United States.  As demonstrated below, Plaintiff is not likely to succeed on its claim that the accused goods are infringing at all.  But Plaintiff is not seeking an injunction to prevent the sale of the accused goods in the United States; it seeks to enjoin Balenciaga America from transferring the goods outside the United States.  Because the goods were designed and manufactured in Europe by other parties, and because there is no predicate act in the United States by Balenciaga America, the Copyright Act simply does not apply to transactions outside the United States.  *See supra* § II.A.  Accordingly, Plaintiff has not and cannot demonstrate a likelihood of success on the merits of the only claim that is relevant to its request of an injunction.  *See Twentieth Century Fox Film Corp.*, 277 F.3d at 260 (affirming denial of preliminary injunction where, although Plaintiff demonstrated the sufficiency of the false advertising component of its Lanham Act claim, it sought to enjoin the airing of a TV series—an act that likely did not amount to false advertising).

**B.      Plaintiff Cannot Demonstrate A Likelihood Of
Success On The Merits Of Its Infringement Claim.**

**1.      Defendant Has Not Infringed Any Valid
Registered Copyright Owned By Plaintiff.**

In its moving papers, Plaintiff declares peremptorily that it will win on its claim of
infringement, without offering any meaningful analysis.    To succeed on its copyright
infringement claim, Plaintiff must show:  (i) ownership of a valid copyright; (ii) that Defendant
actually copied Plaintiff's work; and (iii) that the copying is illegal because a substantial
similarity exists between the defendant's work and the protectable elements of plaintiff's work.
*See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010).

With respect to the third factor, in determining "whether two works are substantially
similar – and thus whether any copying was wrongful," the Second Circuit usually applies the
"ordinary observer" test, which asks "whether 'the ordinary observer, unless he set out to detect
the disparities, would be disposed to overlook them, and regard their aesthetic appeal the same.'"
*Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 102 (2d Cir. 2014).  However, in cases where
a copyrighted work contains both protectable and non-protectable elements, the Court "'must be
more discerning, [and] ignor[e] those aspects of a work that are unprotectable' as [it] appli[ies]
the test . . . ."  *Id.*  This "discerning ordinary observer" test entails "a careful assessment of the
'total concept and feel' of the works at issue, *after* the non-protectible elements have been
eliminated from consideration.'"  *Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 631
(S.D.N.Y. 2004) (emphasis added), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x
720 (2d Cir. 2007).

In evaluating what elements are not protected by the copyright laws, the Court is guided
by the "fundamental principle of copyright law that a copyright does not protect an idea, but only
the expression of the idea."  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 703 (2d Cir.

12

1992).  By application of this principle, copyright protection extends only to those components of the work that are original to the creator.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).  Under the merger doctrine, "even expression [of an idea] is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."  *Hart v. Dan Chase Taxidermy Supply Co.*, 86 F.3d 320, 322 (2d Cir. 1996).  Similarly, copyright protection is not afforded to "*scénes á faire*"—expressions that are "indispensable, or at least standard, in the treatment of" a given idea.  *See Computer Assocs. Int'l, Inc.*, 982 F.2d at 709.

Here, Plaintiff contends that the products in the Balenciaga NYC Tourist Collection are substantially similar because they depict the New York City skyline using the same well-known landmarks, in similar arrangements and similar artistic styles.  *See* Br. 8-12.  Plaintiff acknowledges, however, that the primary elements of its design – the Statue of Liberty, Empire State Building, Flatiron Building, Chrysler Building, and Freedom Tower – are not protectable.  *See id.* 11.  Indeed, an artist could not possibly depict or evoke the New York skyline without including these elements; they are thus *scènes à faire*.  *See, e.g.*, *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (*scènes à faire*, which "'necessarily result from the choice of a setting or situation,' do not enjoy copyright protection") (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986)).  Depictions of New York City landmarks and the words "New York City" are stock images and phrases standard in tourist souvenirs.

Here, even the images submitted by Plaintiff show that the landmarks are arranged differently in the accused goods.  CMI's designs include many more, less identifiable, buildings, and the iconic landmarks are arranged in a different order than in the Balenciaga America products.  The image attached to the Plaintiff's Certificate of Copyright Registration depicts,

13

from left to right, the Freedom Tower, Chrysler Building, Empire State Building, and Statute of Liberty; the Flatiron Building is not easily identified:



Gindi Decl. Exh A. (CMI design on copyright registration, depicting, from left to right, Freedom Tower, Chrysler Building, Empire State Building, and Statute of Liberty (facing to the left); Flatiron Building omitted).[4]  In the Balenciaga America design, the landmarks appear, from left to right, as follows:   Empire State Building, Statue of Liberty (facing to the right), Chrysler Building, Flatiron Building, and Freedom Tower:

---

[4]    As Plaintiff points out, the Certificate of Registration also depicts some CMI products which have some variation in the design, but Plaintiff describes these as "negligible variations" done to fit the design on various products.  *See* Gindi Decl. ¶ 7.  Accordingly, Balenciaga America focuses on the primary image, which is the one covered by the copyright registration.



*See* Gindi Decl. Exh. B.

While the style of the designs is similar, that is because both pay homage to hot rod and graffiti-style airbrushed styles, which belongs to no one (and everyone). *See* Capeci Decl. ¶ 6. Given that the only protectable aspect of the CMI design is the arrangement of the iconic landmarks, Balenciaga America's re-arrangement of the landmarks (and inclusion of other features not present in the CMI design) defeats any claim of infringement when the unprotectable elements are filtered out and the designs viewed from the perspective of a discerning ordinary observer.

2. **Balenciaga America's Design Is Also Protected As A Fair Use.**

To the extent that Balenciaga America incorporates any protectable elements of the CMI design, Plaintiff cannot demonstrate a likelihood to succeed on the merits because its copyright infringement claims is barred by the doctrine of fair use codified in Section 107 of the Copyright Act. *See Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 327 (S.D.N.Y. 2008) (holding that a showing of a likelihood of prevailing on a fair use defense precludes a showing of likelihood of prevailing on a copyright infringement claim). The fair use doctrine protects the right to use copyrighted material for new and transformative purposes. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

In assessing fair use, the Court weighs the following four statutory factors: "(i) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (iv) the effect of the use upon the potential market for or value of the copyrighted work." *Id.* at 577-78; 17 U.S.C. § 107. While these factors inform the fair use analysis, "[t]he ultimate test of fair use" is whether copyright's goal of "'promot[ing] the Progress of Science and useful Arts' . . . 'would be better served by allowing the use than by preventing it.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998).

The focus of the first factor is on the "transformative" nature of the accused work. *See Campbell*, 510 U.S. at 579. A work is transformative when it does not "merely supersede[] the objects of the original creation," but rather "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id.*; *see also Blanch v. Koons*, 467 F.3d 244, 252-56 (2d Cir. 2006) (holding that painting appropriating magazine photographs was transformative in that it used the images as "commentary on the

social and aesthetic consequences of mass media"—a different purpose than the photographer's goal in creating the images for the magazine).  In the Balenciaga NYC Tourist Collection, mass-manufactured plastic and vinyl tourist trinkets found in airports and every souvenir shop in Midtown Manhattan[5] are transformed, with a wink and tongue firmly in cheek, into handmade, lamb leather, *haute couture* accessories aimed at fashionistas who may never have visited New York.  *See* Capeci Decl. ¶ 4.  City Merchandise's inexpensive products are sold only in New York, to remind visitors of their vacations.  *See* Gindi Decl. ¶¶ 4, 8.  The transformative purpose of Balenciaga America's products strongly supports a finding of fair use.

The second factor considers the extent to which the allegedly infringed work is factual or expressive.  *Blanch*, 467 F.3d at 256.  CMI's designs here are largely factual:  they depict the actual landmarks of the New York City skyline (albeit in a stylized way), and those elements are so strongly identified with New York that they have become *scènes à faire*.  Accordingly, this factor weighs in favor of fair use, especially given that any use by Balenciaga America is transformative.  *Id.* at 257.

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).  The central question is whether the extent of copying is reasonable in light of its purpose.  *See Campbell*, 510 U.S. at 586; *Blanch*, 467 F.3d at 257.  Depending on the purpose, using a substantial portion of a work – or even the whole thing – may be permissible.  *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006).  Here, to the extent that there was any copying, it was limited to

---

[5]   Balenciaga America is not disparaging CMI's goods; these descriptions come from Plaintiff's own declaration:  "NYC Skyline Products have been sold in souvenir stores throughout the New York metropolitan area, including in airports and train stations."  Gindi Decl. ¶ 8.  "City Merchandise's tote bag was sold in souvenir shops to the public for about 20 bucks."  *Id.*

the elements that are *scènes à faire* or otherwise unprotectable (color, artistic style), and that limited copying was necessary to evoke the idea of a souvenir product.

Finally, the fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "requires a balancing of the benefit the public will derive if the use is permitted" versus "the personal gain the copyright owner will receive if the use is denied." *Bill Graham*, 448 F.3d at 613; *Wright v. Warner Books, Inc.*, 953 F.2d 731, 739 (2d Cir. 1991). Here, all parties agree that CMI's products and Balenciaga America's products are offered at very different price points, through disparate retail channels, to separate customer segments; there is no risk of overlap or lost sales, as CMI's owner effectively concedes. *See* Gindi Decl. ¶ 9 (acknowledging that she could not prove any lost sales). Indeed, while Balenciaga America has not yet had an opportunity to conduct discovery, it is not unreasonable to think that Plaintiff's sales have ***increased*** from the publicity around this case.

## IV.   The Balance Of The Hardships Does Not Tip In Favor Of Plaintiff.

For this prong, Plaintiff does nothing more than repackage its irreparable harm argument. Plaintiff contends that the balance of the equities weigh in favor of injunctive relief because absent an injunction, Defendant "will be able to illegally sell and distribute" the Balenciaga NYC Tourist Collection overseas and "will continue" to appropriate the Design "at City Merchandise's expense." Br. 14. As explained previously (*supra* § II), there is nothing in U.S. copyright law that prohibits Balenciaga America from selling the accused products outside the territorial limits of the United States, and, consequently, Plaintiff will not suffer any cognizable harm (and certainly not any harm that could not be remedied through monetary damages). In all events, there is no need for an injunction: Defendant has removed the items from its retail boutiques and

18

represented that it has no plans to export items in the Balenciaga NYC Tourist Collection, which are limited to a total of 36 items in inventory.  *See* Capeci Decl. ¶¶ 10-11.

Accordingly, the balance of the hardships does not tip in favor of issuing an injunction. *See Buffalo Forge Co. v. Ampco–Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981) ("the movant must show that the harm which he would suffer from the denial of his motion is 'decidedly' greater than the harm his opponent would suffer if the motion was granted"); *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 419 (E.D.N.Y. 2011) (where plaintiff failed to demonstrate any lost sales "the balance of hardships [did] not tip decidedly in plaintiff's favor").

## V.     The Public Interest Does Not Weigh In Favor Of An Injunction.

Plaintiff's argument that the public interest weighs in favor of an injunction is mere *ipse dixit*; CMI declares that the public interest requires enforcement of copyright law to "support and protect[ ] . . . legitimate business behavior" and "protect against public confusion."  Br. 15. These conclusory statements fail to demonstrate that these aims would be met by the issuance of a preliminary injunction.  Where, as here, the products are not competing, there is no harm to Plaintiff's business or risk of public confusion.

Further, copyright law balances the competing interests of broad accessibility to creative works and incentivizing creative efforts through economic reward.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985) ("By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas."); *WPIX, Inc.*, 691 F.3d at 287 ("Copyright law inherently balances . . . the public interest in the broad accessibility of creative works, and the rights of copyright owners and the public interest in rewarding and incentivizing creative efforts . . ."); *Salinger*, 607 F.3d at 81 n.9 (explaining that copyright law aims "to stimulate creation by protecting its rewards").

19

Here, the sale of products in the Balenciaga NYC Tourist Collection will not dampen sales of City Merchandise's products.  *See supra* § II.C.  Accordingly, issuing an injunction is no way serves the interest of incentivizing creative efforts through economic reward.

In fact, the public interest would be disserved by the granting of a preliminary injunction. The public interest is not served by entering an injunction against products, like those at issue here, that do not infringe or, if there were any infringement, are protected as fair use.  *See supra* § III.B.  Issuing an injunction under these circumstances would dampen creative efforts to transform items into new creative works.  *See Campbell*, 510 U.S. at 578 n.10 ("[C]ourts may also wish to bear in mind that the goals of the copyright law, 'to stimulate the creation and publication of edifying matter,' are not always best served by automatically granting injunctive relief when parodists are found to have gone beyond the bounds of fair use." (internal citation omitted)).  Accordingly, injunctive relief should not be granted.

## VI.    Plaintiffs' Request For An Order Of Seizure Is Baseless.

Plaintiff contends that seizure orders under 17 U.S.C. § 503 are "routinely utilized by courts in conjunction with a preliminary injunction in copyright infringement cases."  Br. 15. Regardless, "[s]eizure and impoundment have described by the Second Circuit as 'drastic acts.'" *Merit Diamond Corp. v. Frederick Goldman, Inc.*, 376 F. Supp. 2d 517, 527 (S.D.N.Y. 2005) (quoting *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir.1989)).

Seizure under Section 503(a) is not "a mandatory form of relief;" rather, the court is permitted to order such relief "on 'terms [the Court] may deem reasonable.'"  *Paramount Pictures Corp. v. Doe*, 821 F. Supp. 82, 86 (E.D.N.Y. 1993).  A seizure order will only be entered where a moving party demonstrates that the standards for issuance of a preliminary injunction have been met.  *See Entral Grp. Int'l, LLC v. Honey Café on 5th, Inc.*, No. 05 CV 2290, 2006 WL 3694584, at *8 (E.D.N.Y. Dec. 14, 2006).

Here, Plaintiff has not met its burden of demonstrating that a preliminary injunction should be issued.  Indeed, Plaintiff is attempting to accomplish through a seizure order what it cannot through a preliminary injunction—preventing the exportation of goods.  *See* Br. 16 (arguing that impoundment would protect Plaintiff "from unlawful overseas sales for which it may have no remedy" and keep the Balenciaga NYC Tourist Collection "within the jurisdiction of the Court").  Accordingly, there is no basis for issuance of a seizure order.

Further, Defendant has removed the items from its retail boutiques and represented that it has no plans to export items in the Balenciaga NYC Tourist Collection, which are limited to a total of 36 items in inventory.  *See* Capeci Decl. ¶¶ 10-11.  Accordingly, a seizure order would place a burden on Defendant with no corresponding benefit to Plaintiff.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated:  New York, New York
         October 18, 2018

**BROWN RUDNICK LLP**

/s/ Jill L. Forster
Jill L. Forster
Seven Times Square
New York, NY 10036
(212) 209-4800 (telephone)
(212) 209-4801 (facsimile)
jforster@brownrudnick.com

Edward J. Naughton (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8200 (telephone)
(617) 856-8201 (facsimile)
enaughton@brownrudnick.com

*Counsel for Defendant Balenciaga*
*America, Inc.*