UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY MERCHANDISE INC.,
                            Plaintiff

-against-

BALENCIAGA AMERICA, INC.,
BALENCIAGA, S.A., and DEMNA GVASALIA;
and ABC COMPANIES,
                            Defendants.

Civil Action No.: 1:18-cv-06748 (JSR)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTFF'S
MOTION FOR A PRELIMINARY INJUNCTION, PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 65 (a) AND 17 U.S.C. § 502, AND AN ORDER OF SEIZURE OF
INFRINGING PRODUCTS, PURUSANT TO 17 U.S.C. § 503**

 

**TOPTANI LAW PLLC**
Edward Toptani (ET6703)
375 Pearl Street
Suite 1410
New York, New York 10038
Tel. (212) 699-8930
*edward@toptanilaw.com*

*Counsel to Plaintiff City Merchandise Inc.*

New York, New York
October 23, 2018

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..(i)

PRELIMINARY STATEMENT……………………………………………………… …….1

ARGUMENT………………………………………………………………………....…….3

A.   Likelihood of Success on the Merit…………………………………………………….3

B.   Irreparable Harm……………………………………………………………………….7

C.   The Balance of Equities Tips in Favor of City Merchandise………………………..9

D.   The Public Interest Would not be Disserved by the issuance of an Injunction……10

CONCLUSION…………………………………………………………………………..10

# TABLE OF AUTHORITIERS

**Cases**                                                                                                                    **Page(s)**

*Boisson v. American County Quilts and Linen.*. 273 F.3d 262 (2nd Cir. 2001)……4

*Campbell v. Acuff-Rose Music*, 510 U.S. 569, 586 (1994)………………....…6, 7

*City Merchandise Inc. v. Broadway Gifts, Inc.*, 2009
U.S. Dist. LEXIS 5629 (S.D.N.Y. Jan. 27, 2009)………… ……………….....…5

*De Bardossy v. Puski*, 763 F. Supp. 1239 (S.D.N.Y. 1991)………………….…..8

*Harper & Row, Publishers, Inc. v. National Enterprises*,
471 U.S. 539, 562 (1985)……………………………………………………...6, 7

*Music Sales Ltd. v. Charles Dumont & Sons, Inc.*,
800 F. Supp. 2d 653 (D.N.J. 2009)…………………………………………….8

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)……………….…8, 9

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992)…………………………...………7

*Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010)……………………………. 7

*Sheldon v. Metro-Goldwvn Pictures Corp.*. 81 F.2d 49, 56 (2d. Cir. 1936) ………4

*Silberstein v. Fox Entm't Group. Inc.*.
424 F. Supp.2d 616, 631-632 (S.D.N.Y. 2004)……………………………….…..5

*Sony Corp. of America v. Universal City Studos*, 464 U.S. 417 (1984)………,,….7

*Steinberg v. Columbia Pictures. Inc.*, 663 P. Supp. 706 (S.D.N.Y. 1987)…..…..…5

*Yurman Design Inc. v. PAJ Inc.*, 262 F.3d 101, 109 (2d Cir. 2001) ……………...3

*Zenger-Miller, Inc. v. Training Team, GmbH*,
757 F. Supp. 1062 (N.D. Cal. 1991)………………………………………...…..8

**Statutes**

17 U.S.C. § 107..................................................................,,,,,,....6, 7

17 U.S.C. § 503.............................................................................7

**Secondary Sources**

3 M. Nimmer, Copyright § 13.05[A], at 13-72 (2000)................................6

## PRELIMINARY STATEMENT[1]

This motion was precipitated by Defendant Balenciaga America, Inc.'s ("Defendant") recent assertion that it possesses the right to divert its Infringing Products -- which it has been illegally advertising and offering for sale in the U.S. through multiple channels -- to unknown offshore destinations (and allegedly beyond the jurisdiction of this Court). Thus, plaintiff City Merchandise Inc. ("City Merchandise" or "Plaintiff") has not delayed in bringing this motion.

Defendant's opposition brief ("Opposition Brief" or "Opp.") feigns that this motion is "perplexing." (Br. at 1.) To be sure, Plaintiff is not seeking an injunction with respect to Defendant's infringing sales in the U.S. This is so because Plaintiff will be entitled monetary damages for such illegal sales. On the other hand, because Defendant claims that it possesses the right to extinguish Plaintiff's existing rights of seizure under the Copyright Act and to force it to suffer additional damages, the likelihood of irreparable injury is imminent, especially in light of Defendant's previous and existing lack candor with respect to the Infringing Products. As such, Defendant's 11th hour offer to enter into a stipulation was nothing more than a hollow attempt to address Plaintiff's earlier articulated concerns as to why a preliminary injunction was necessary to protect itself. However, as Defendant advised was previously advised, breach of contract remedies are not nearly as potent to an aggrieved party than those remedies that might otherwise be available to it in connection with a finding of contempt.

That said, Defendant could have avoided this motion by agreeing to the relief requested; or alternatively, it could have otherwise suggested that such a stipulation be "so ordered" by the Court. Defendant, which never prepared a draft of such a proposed stipulation, has provided no explanation as to the reasons why it wishes to avoid being subject to the Court's powers should it divert Infringing Products offshore.

---

[1]   Capitalized terms not defined herein are given the same meanings as in Plaintiff's opening brief (the "Opening Brief" or "Br.").

In its Opposition Brief, Defendant incorrectly argues that Plaintiff does not meet the standards for a preliminary injunction. In doing so, Vira Capeci ("Ms. Capeci"), Defendant's president, does not deny that Defendant had access to Plaintiff's NYC Skyline Products; nor does she deny that the designs on the Infringing Products are knock-offs of the designs on Plaintiff's NYC Skyline Products. Instead, she claims in conclusory terms that the Infringing Products were "[i]nspired by tourist souvenirs…" Not surprisingly, she does not include photos of the alleged inspirational souvenirs, nor does she identify the artist who allegedly created the designs used on the Infringing Products. Although she praises defendant Demna Gvasalia's design skills, she avoids addressing the elephant in the room: Balenciaga's creative designer is known for his knock-offs.

Defendant's Opposition Brief has the temerity to scoff at Plaintiff's claim that its unique interpretation of the New York skyline is a protectable design. (Opp at 2-3.)[2] Regardless, as discussed in Plaintiff's Opening Brief, the similarities between Defendant's Infringing Products and Plaintiff's NYC Skyline Products are so striking as to preclude the possibility that that Plaintiff and Defendant independently arrived at the same result. (Br. at 8-10.) Defendant has not disputed this. Instead, as discussed below, Defendant attempts to invoke the affirmative defenses of *scènes à faire* and fair use, neither of which is remotely viable here.

Similarly, Defendant's argument that Plaintiff cannot show irreparable harm is also without merit. *First*, it is clear that Defendant has already directly infringed Plaintiff's rights inside the U.S. through its misconduct. Thus, Defendant's diversion of the Infringing Products from the U.S. jurisdiction would extinguish Plaintiff's rights to a seizure of those items as under the Copyright Act. *Second*, the diversion of Infringing Products to offshore locations would

---

[2] In doing so, Defendant argues that graffiti art is not original to Plaintiff. This is a red herring as Plaintiff never made such an argument. (*See* Gindi Reply Decl., ¶¶ 3-4, Ex.A.)

2

subject Plaintiff to additional damage which would likely be impossible to estimate let alone uncover.

Finally, Defendant has offered no compelling argument to undermine Plaintiff's earlier arguments that the balance of equities tips in its favor and the public would not be disserved by an injunction.

## ARGUMENT

A. **Likelihood of Success on the Merits**

Defendant does not argue that the subject copyright is invalid nor does it dispute access to the Design used on the NYC Skyline Products, which have been widely disseminated throughout the public by Plaintiff. Therefore, the central issue for the Court is the existence of substantial similarity.

Defendant makes a half-hearted attempt to suggest that Plaintiff's copyrighted Design is not original and therefore not protectable. (*See* Opp. at 2-3 (referring to "Plaintiff's supposed original design" consisting of "a collage of some of the most well-known landmarks in the New York City skyline, which are unprotectable under copyright law.") Defendant, however, has offered no evidence of unoriginality. *Yurman Design Inc. v. PAJ Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)("Copyright law may protect a combination of elements that are unoriginal in themselves).

As discussed in Plaintiff's moving papers, even at first glance, one immediately observes the striking and substantial stylistic relationship between the designs on the Infringing Products and those on the NYC Skyline Products. Plaintiff's and Defendant's corresponding products each possess substantially and strikingly similar styles, skyline perspectives and vantage points, depicted objects and environmental elements, color schemes, materials, shapes and sizes, and layouts, proportions and arrangements. *See Boisson v. American County Quilts and Linens*, 273 F.3d 262 (2nd Cir. 2001) (particular layouts and color combinations with other elements may be copyrighted). By electing to use these same uniquely combined elements in their designs,

3

arrangements and styles as the ones Plaintiff selected, Defendant has created products that indisputably have the same "total concept and feel" as the City Merchandise's products.

Defendant's opposition completely ignores the absurd similarities between the Infringing Products and the NYC Skyline Products, including the fact that the products undoubtedly have the same "total concept and feel". (*See, e.g.,* Gindi Decl. ¶¶ 11-13.). Instead, Defendant has argued that "an artist could not possibly depict or evoke the New York skyline without including these elements; they are thus *scènes à faire*." (Opp. at 13.) That, of course, is not true. Plaintiff has already shown that Balenciaga did not have to use the same five landmarks selected by Plaintiff, not did it have to use the same lettering, arrangements, colors, etc. Plaintiff has shown that there are innumerable creative and artistic ways in which products featuring New York City can be expressed without infringing Plaintiff's copyrighted Design that was used on its NYC Skyline Collection. (*See, e.g.,* Gindi Decl., Exs, C & D; *see also* Gindi Reply Decl, Ex. A (examples of multiple original graffiti designs depicting various different NYC landmarks and attractions).[3]

Thus, contrary Defendant's claim, this case is not an example of unprotectable *scènes à faire* as discussed in *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (finding no infringement when the primary similarity between works lay in the same "idea" of a story set in a

---

[3]  In an obviously strained attempt to avoid substantial similarity, Defendant shamelessly ignores the individual designs on each of the NYC Skyline Products included in Plaintiff's copyright (i.e., the designs Balenciaga had access to and copied) when making its comparisons. (*See* Gindi Decl., Ex. A; Opp at 14-5.) Instead, it focuses on a different version of the Design that Defendant never saw, then it declares that the "landmarks are arranged differently in the accused goods... Plaintiff's "designs include many more, less identifiable, buildings, and the iconic landmarks are arranged in a different order than in the Balenciaga America products." (*Id.* at 13.) Setting aside the fact that Defendant has identified no meaningful differences between the designs, it has clearly violated the rule governing the type of analysis courts in this circuit are required to employ. "Th[e] 'discerning ordinary observer' inquiry entails not a piecemeal comparison of each of the protectible elements with its putative imitation, but rather a careful assessment of the 'total concept and feel' of the works at issue, after the non-protectible elements have been eliminated from consideration." *Silberstein v. Fox Entm't Group. Inc..* 424 F. Supp.2d 616, 631-632 (S.D.N.Y. 2004). It has long been settled that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate. *Sheldon v. Metro-Goldwyn Pictures* Corp., 81 F.2d 49, 56 (2nd Cir. 1936) (Hand. J.).

dinosaur theme park). In fact, Defendant's *scènes à faire* argument was specifically rejected in *Steinberg v. Columbia Pictures. Inc.*, 663 P. Supp. 706 (S.D.N.Y. 1987). There, the court ruled that the defendants' movie poster infringed plaintiffs whimsical illustration of a New York City scene and recognized that while it is undeniable that a drawing depicting parts of New York City could be expected to include certain elements commonly associated with New York City, it was the plaintiff's "expression'" of those elements that was protected.[4]

Similarly, Defendant is in the high-end fashion business to make a handsome profit; and, in fact, is on track to soon hit annual sales of billion euros, and, as shown in the First Amended Complaint, is brazenly willing to copy the work of others to do so.[5] As such, Defendant's conclusory and unsupported argument that the affirmative defense of "fair use" relieves it of liability is without merit.

Defendant's use of Plaintiff's copyrighted designs on the Infringing Products is not for teaching, research scholarship, comment, news reporting, or any other good intentioned purpose. 17 U.S.C. § 107.[6] In fact, as already discussed, Defendant's Infringing Products include virtually indistinguishable copies of Plaintiff's copyrighted Design. Thus, Defendant's knock-offs have not transformed Plaintiff's design by adding new expression or meaning; nor have they added new information, new aesthetics, new insights or understandings. In short, there is

---

[4] *See also, City Merchandise Inc. v. Broadway Gifts, Inc.*, 2009 U.S. Dist. LEXIS 5629 (S.D.N.Y. Jan. 27, 2009) (granting preliminary injunction in favor of City Merchandise where defendants' works were substantially similar to plaintiff's NYC Skyline Collection in total concept and feel, including the same coordination, arrangement, whimsical style, color schemes, scales, etc.)

[5] Indeed, Defendant seems to have no limits as to how far it will go ripping-off others. Last Friday, it was sued in this District for slavishly copying the well-known tree-shaped car fresheners that people often hang from their rear view mirrors. *Car-Fresnher Corp. v. Balenciaga America, Inc.* (1:18-cv-09629). Defendant's "couture" version costs $275.00

[6] "The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use." *Harper & Row, Publishers, Inc. v. National Enterprises*, 471 U.S. 539, 562 (1985).

5

nothing socially redeeming from Defendant's infringing activity which includes selling $2,000 knock-offs of Defendant's designs.[7]

The relevant second factor to consider is "the nature of the copyrighted work." 17 U.S.C. § 107. It "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 586 (1994). As discussed above, Plaintiff's copyrighted Design, which includes its unique and original interpretation of the NYC skyline, is clearly entitled to, and has received, a high degree of protection under copyright law.

The third "fair use" factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. This factor "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Campbell*, 510 U.S. at 587.[8] Again, the qualitative and quantitative degree of copying here is uncanny (as many press observers have also agreed).

The fourth and final relevant factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. To negate fair use, the copyright owner need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work. *Harper & Row, Publishers, Inc.*, 471 U.S at 568 (citations and quotation marks omitted). This factor must take account of harm not only to the

---

[7] Moreover, the "propriety of the defendant's conduct" is also relevant to "character" of the use (Harper & Row, Publishers, Inc., 471 U.S. at 562 (quoting 3 M. Nimmer, Copyright § 13.05[A], at 13-72 (2000), because "fair use" presupposes "good faith" and "fair dealing." *Harper & Row, Publishers, Inc.*, 471 U.S. at 562-563 (citations and quotations omitted).

[8] "Here, attention turns to the persuasiveness of a [user's] justification for the particular copying done, and the enquiry will harken back to the first of the statutory factors, for . . . the extent of permissible copying varies with the purpose and character of the use." *Id.* at 586-87.

6

original but also of harm to the market for derivative works. *Id.* Moreover, "where the use is intended for commercial gain some meaningful likelihood of future harm is presumed. *See Sony Corp. of America v. Universal City Studos*, 464 U.S. 417, 451 (1984) Thus, that the Infringing Products and the NYC Skyline Products may be in different markets irrelevant. *See Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) (finding that it does not matter that the plaintiff had not considered entering the infringer's market, what mattered was that a potential market for plaintiff existed).

**B. Irreparable Harm**

Plaintiff did not fabricate its concern about Defendant diverting the Infringing Products overseas. Rather, it directly emanated from the litigation posture Defendant's counsel proclaimed with regard to Defendant's alleged rights. In particular, it is Defendant's position that it has the legal right to divert the Infringing Products to secret locations overseas. By doing so, Defendant would not only extinguish Plaintiff's potential relief of seizure and destruction of the Infringing Products as under the Copyright Act (i.e., 17 U.S.C. § 503), but it would also subject Plaintiff to additional damages from overseas infringement, which would be impossible to estimate with precision the amount of monetary loss which would result.[9] The Second Circuit has determined that harm may be irreparable where the loss is difficult to replace or measure, or where a plaintiff should not be expected to suffer the loss

Defendant does not deny the foregoing. Instead, it incorrectly argues that Plaintiff would not be damaged under the Copyright Act because it does not apply to the exportation of the

---

[9]  In addition, Deborah Gindi has also previously discussed the injury to Plaintiff's reputation and business (Gindi Decl. ¶ 9.) (*See also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)(upholding district court's finding of irreparable harm based upon loss of reputation, good will and business opportunities.)

7

Infringing Products overseas.[10] However, "[c]ases which have asserted jurisdiction based on the application of copyright laws have uniformly found some act of infringement in the U.S." *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1072 (N.D. Cal. 1991); *see also De Bardossy v. Puski*, 763 F. Supp. 1239, 1243 (S.D.N.Y. 1991) (holding that "jurisdiction [is] proper in the United States . . . if [a] plaintiff can show that an infringing act occurred in the United States"). Here, there is no doubt that Plaintiff has shown that Defendant has committed predict acts of direct copyright infringement inside the U.S. by offering and selling the Infringing Products through numerous retail channels, including online. Furthermore, the First Amended Complaint has set forth numerous reasons why Defendant is also liable for the direct acts of infringement in the U.S. by co-defendants Balenciaga, S.A. and Demna Gvasalia. (*See, e.g.*, FAC ¶¶ 37, 39, 56.)

In addition, Defendant's last minute contention that it has no current plans to transfer its inventory in the U.S. should not be a meritorious basis to defeat its motion. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)(defendant's agreement to cease using plaintiff's name was insufficient to prevent issuance of preliminary injunction.) Here, there are many good reasons to question defendant's good faith and reliability of its representation. (*See* Toptani

---

[10] Defendant's citation to *Music Sales Ltd. v. Charles Dumont & Sons, Inc.*, 800 F. Supp. 2d 653 (D.N.J. 2009) is misleading and not helpful to its case. In fact, that case helps Plaintiff. There, the court noted that the defendant actually had distribution rights in the U.S. with respect to the sheet music at issue, and that if the defendant engaged in unauthorized use of the music in the United States and then distributed those copies abroad, the conduct would likely have given rise to a cause of action under the Copyright Act because of a predicate act of infringement. *Id* at 660. Moreover, the existence of a predicate act in the U.S. is only germane to the issue of the scope of the Copyright Act's reach with respect to offshore infringement and does not impact Plaintiff's existing rights under the Copyright Act, nor whether it would be damaged in an unknown amount by overseas infringement. To the extent the Copyright Act does not apply to overseas infringement, as Defendant's assert, Plaintiff has asserted other viable claims against Defendant for such wrongdoing. Defendant has cited no cases supporting the proposition that an infringer (and anybody for that matter) has the right to export infringing goods overseas.

Reply Decl. ¶¶ 4-20 (showing, among other things, Defendant dissembling and lack of candor concerning the full scope of its Infringing Products from its inventory).)  Moreover, Defendant remains part of an integrated global network whose partners, including defendants Balenciaga, S.A. and Demna Gvasalia, apparently continue to offer the Infringing Products overseas through multiple unknown channels.

Finally Plaintiff has not delayed in filing this motion, as Defendant incorrectly alleges. Plaintiff moved promptly after reasonably concluding that Defendant would divert its Inventory of Infringing Products to an unknown location overseas. (*See* Toptani Reply Decl. ¶ 14.)

## C. The Balance Of Equities Tips In Favor of Plaintiff

Defendant simply repeats its argument that Plaintiff would suffer no irreparable injury to support its assertion that the equities tip in its favor.  Here, there would be absolutely no burden on Defendant if the injunction were issued with an accompanying seizure order, which is indisputably within the Court's powers.  Defendant has not argued otherwise

Notably, if Defendant decided to reverse course with respect to its currently stated intention to not transfer the Infringing Products overseas,  Plaintiff's existing seizure rights under the Copyright Act (which Defendant concedes exists (Opp. at 20)) would be extinguished. Moreover, in such a scenario, according to Defendant, Plaintiff would be left without any remedy under the Copyright Act -- even though Defendant and its affiliates would unjustly benefit.

## D. The Public Interest Would Not Be Disserved by the Issuance of an Injunction

As discussed in Plaintiff's Opening Brief, the public interest would not be disserved by the issuance of an injunction. (Br. at 14-15). Defendant's assertion otherwise relies upon the illicit premise that it is fair game for large companies to appropriate the work of others. Defendant simply does not have the subversive right to appropriate the hard work of others in

9

order to profit from the sale of high priced "couture." Just because Plaintiff's designs are placed on relatively inexpensive items does not mean that such designs are not entitled to full protection under the law. Undoubtedly, had Plaintiff created its NYC Skyline Products using the designs on the Infringing Products as its "inspiration," Plaintiff would be the defendant in this lawsuit.

## CONCLUSION

For all the foregoing reason, it is respectfully requests that this Court grant Plaintiff's motion in its entirety.

Dated: New York, New York
October 23, 2018

**TOPTANI LAW PLLC**

By: _/s/ Edward Toptani_
Edward Toptani (6703)
375 Pearl Street, Suite 1410
New York, New York 10038
Telephone: (212) 699-8930
Telecopier: (212) 320-0371
edward@toptanilaw.com

*Counsel for Plaintiff City Merchandise Inc.*